UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raymond L. Semler,

    Plaintiff,

  vs.       REPORT AND RECOMMENDATION

Eric Klang,[1] Rick Koop, John
A. Bolduc, and Kyle Huber,

    Defendants.  Civ. No. 08-919 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motions to Dismiss, and the Plaintiff's Motion for Default Judgment. For these purposes, the Plaintiff Raymond L. Semler appears pro se; the Defendants John A. Bolduc ("Bolduc"), Kyle Huber ("Huber"), and Rick Koop ("Koop") (collectively, the "City Defendants"), appear by Jason M. Hiveley, Esq.; and the Defendant Erick Klang ("Klang") appears by James R.

---

[1]It appears that the Plaintiff has misspelled this Defendant's name as "Eric Klang," while the correct spelling is "Erick Klang." Throughout this Report, we employ the correct spelling.

Andreen, Esq.  For reasons which follow, we recommend that the Defendants' Motions to Dismiss be granted, and that the Plaintiff's Motion for Default Judgment be denied.

## II.  Factual and Procedural Background

The Plaintiff is a patient in the Minnesota Sex Offender Program ("MSOP"), in Moose Lake, Minnesota.  See, Complaint, Docket No. 1, at p. 2 ¶1.  He has been civilly committed as a Sexually Dangerous Person, for an indeterminate term, pursuant to Minnesota Statutes Section 253B.185.  See, In the Matter of the Civil Commitment of Raymond Leon Semler ("In re Semler"), 2007 WL 969081 (Minn. App., April 3, 2007), rev. denied (Minn., May 30, 2007).  In affirming the Plaintiff's civil commitment, the Minnesota Court of Appeals detailed the Plaintiff's sexual misconduct, which included a long history of stalking, harassing, and molesting, five (5) female victims, beginning when he was only eight (8) years old.  Id. at *2.  In 1989, when the Plaintiff was thirteen (13) years old, he grabbed a fourteen (14) year old girl, who was walking home from school, and dragged her toward a nearby vacant house.  Id.  The victim was able to escape, and no charges were filed.  Id.  Several years later, another female victim informed the police that the Plaintiff had been stalking and harassing her, and the Plaintiff was warned to leave the victim alone.  Id.

In 1993, at the age of seventeen (17), the Plaintiff kidnapped and forcibly raped a seventeen (17) year old pregnant girl.  <u>Id.</u>  The Plaintiff was charged with third-degree criminal sexual conduct, but he was not convicted, "[d]ue to a mistrial after jeopardy attached."  <u>Id.</u>  In 1996, when the Plaintiff was twenty (20) years old, he approached a woman who was riding a bicycle, and "grabbed her breast and buttocks."  <u>Id.</u> at *3.  The victim was able to escape with the help of a passerby and, as a result of this incident, the Plaintiff was subsequently convicted, in 1997, of fourth-degree criminal sexual conduct, and kidnapping (the "1997 convictions").  <u>Id.</u>; see also, <u>State v. Semler</u>, 2008 WL 73235 at *1 (Minn. App., January 8, 2008).  The Plaintiff was sentenced to forty-two (42) months in prison, but the execution of his sentence was stayed, and he was placed on fifty (50) years of supervised probation, which required him to abstain from alcohol, and to complete sex offender treatment. <u>Id.</u>; <u>State v. Semler</u>, supra at *1.

Within the first three (3) years of the Plaintiff's probation, he admits that he was "convicted of two (2) Driving While Intoxicated [offenses] * * * and 6-Driving After Revocation [offenses]."  <u>Complaint</u>, supra at p. 5.  As a result of the Plaintiff's second conviction for Driving While Intoxicated, his probation was revoked, and he was ordered to serve the forty-two (42) month sentence, which had been imposed for his

1997 convictions. Id. On January 5, 2001, the Plaintiff began serving his sentence in State prison. Id.; see also, State v. Semler, supra at *1.

Shortly before the Plaintiff was scheduled to be released from prison, the Minnesota Department of Corrections ("DOC") convened an End of Confinement Review Committee ("ECRC"), in order to determine whether the Plaintiff should be identified as a sex offender under Minnesota law, and if so, which "risk level" he should be assigned.[2] See, Semler v. Klang, 743 N.W.2d 273, 275 (Minn.App. 2007), rev. denied (Minn., Feb. 19, 2008). In his Complaint, the Plaintiff alleges that the ECRC considered certain information, which was furnished by Koop, who the Plaintiff identifies as the "Chief Investigator" for the Crosby Police Department. See, Complaint, supra at p. 9 and Exhibit 1. Koop allegedly informed the ECRC that the Plaintiff had been the subject of three (3) criminal investigations, although only one

_____

[2]Pursuant to Minnesota Statutes Section 244.052, Subdivision 3, the DOC must establish a standing ECRC at each Minnesota prison, to "assess on a case-by-case basis the public risk posed by predatory offenders who are about to be released from confinement." The ECRC is charged with determining the "risk level" of offenders who are scheduled to be released from prison: Level I for offenders with a low risk of reoffense, Level II for offenders with a moderate risk for reoffense, or Level III for offenders with a high risk of reoffense. See, Minnesota Statutes Section 244.052, Subdivision 3(e). The ECRC initially classified the Plaintiff as a Level II sex offender. See, Semler v. Klang, 743 N.W.2d 273, 275 (Minn. App. 2007), rev. denied (Minn., Feb. 19, 2008); Complaint, supra, Exhibit 1.

(1) of those investigations resulted in a conviction -- namely, the Plaintiff's 1997 convictions for fourth-degree criminal sexual conduct, and for kidnaping.  Id.

On December 31, 2001, the Plaintiff was granted a conditional release from prison, and he moved into his parents' home in Deerwood, Minnesota, which is located in Crow Wing County.  Id. at p. 5.  Approximately one (1) week later, on January 7, 2002, Klang, who was the Crow Wing County Sheriff, allegedly distributed a Notification of Release, pursuant to Minnesota Statutes Section 244.052, in order to notify the public that a Level II sex offender had been released into the community. Id. at p. 8 ¶1 and Exhibit 1A.[3]  The Notification of Release described the Plaintiff as follows:

> [The Plaintiff] has a history of forced sexual contact with females (ranging in age from 14-adult).  The contact includes fondling and penetration.  The offender uses physical force to gain compliance.  The offender was unknown to the victims.

Id.

---

[3]Minnesota Statutes Section 244.052, Subdivision 4, contains a number of guidelines, which generally require "[t]he law enforcement agency in the area where the predatory offender resides, expects to reside, is employed, or is regularly found [to] disclose to the public [certain] information * * * that is relevant and necessary to protect the public and to counteract the offender's dangerousness[.]"

- 5 -

In August of 2002, the Plaintiff violated the terms of his conditional release, and he was reincarcerated.  Id. at p. 5.  The Plaintiff was subsequently released from prison but, in February of 2003, he returned to prison, after once again violating the terms of his conditional release.  Id.  In June of 2003, the Plaintiff was again released from prison, and he moved into a friend's residence in Crow Wing County.  Id. at p. 6.  At that time, Klang distributed another Notification of Release, which included the same description of the Plaintiff.  Id. at pp. 6, 8 and Exhibits 9, 11.

Subsequently, the Plaintiff moved to a motel in Brainerd, Minnesota, and on July 1, 2003, Bolduc, who was the Brainerd Chief of Police, distributed a Notification of Release, which included the same description of the Plaintiff.  Id. at pp. 3, 9 and Exhibits 2-3.  By August of 2003, the Plaintiff had moved again, this time to Staples, Minnesota, and on August 23, 2003, Huber, who was the Staples Chief of Police, distributed a Notification of Release, which included the same description of the Plaintiff.  Id. at pp. 3, 9 and Exhibit 13.

On May 1, 2004, the Plaintiff was arrested, which resulted in another revocation of his conditional release.  Id. at p. 6.  Before his release from prison, another ECRC was convened, which, on January 25, 2005, re-classified the Plaintiff as a Level III sex offender.  Id.  Accordingly, in April of 2005, the State of Minnesota petitioned for the

Plaintiff's civil commitment, as a Sexual Psychopathic Personality, and as a Sexually Dangerous Person. Id.; see, Minnesota Statutes Section 253B.185. In May of 2005, the Plaintiff was transferred to the State hospital in St. Peter, Minnesota, and ultimately, on September 26, 2006, the Plaintiff was civilly committed to the MSOP for an indeterminate term, by a State Court. Id. On April 3, 2007, the Minnesota Court of Appeals affirmed the Plaintiff's civil commitment, and on May 30, 2007, the Minnesota Supreme Court denied his petition for review. Id.; see also, In re Semler, supra.

In November of 2005, while his civil commitment proceedings remained pending, the Plaintiff commenced a civil action in Crow Wing County District Court (the "State Court action"), against Bolduc, Huber, Koop, and Klang -- the same four (4) Defendants who are named in this action. See, Complaint, supra at p. 10; see also, Affidavit of Jason M. Hiveley ("Hiveley Aff."), Docket No. 16, Exhibit A ("State Court Complaint"). In his State Court Complaint, the Plaintiff alleged claims for slander and defamation, against Koop, for "sending incorrect, erroneous and false statements" to the ECRC, and against Bolduc, Huber, and Klang, for "putting incorrect, erroneous and false statements" on the Notifications of Release. See, State Court Complaint, supra at pp. 2-3. Specifically, the Plaintiff alleged that the

Notifications of Release, as we have quoted them, falsely implied that he had actually been **convicted** of sex offenses on multiple occasions, even though he had only been convicted for one (1) incident.  Id.  He further alleged that the Notifications of Release falsely implied that his convictions involved forcible penetration, and a fourteen (14) year old female victim, when, in fact, his 1997 convictions involved grabbing an adult female victim.  Id.[4]

The Plaintiff's State Court action was based primarily on Minnesota Statutes Section 244.052, Subdivision 7(c), which provides limited immunity to State or local officials, for the distribution of sex offender notifications, as follows:

> A state or local agency or official, or a private organization or individual authorized to act on behalf of a state or local agency or official, is not civilly liable for disclosing information as permitted by this section.  **However, this paragraph applies only to disclosure of information that is consistent with the offender's conviction history.  It does not apply to disclosure of information relating to conduct for which the offender was not convicted.**

[Emphasis added].

---

[4]As we have detailed, the Plaintiff was accused of attacking a fourteen (14) year old female victim, and he was charged with forcibly raping a seventeen (17) year old female victim.  However, he was not convicted for either of those incidents, although, in affirming the Plaintiff's civil commitment, the Minnesota Court of Appeals considered those incidents in finding "clear and convincing evidence that Semler engaged in a course of harmful sexual conduct."  In re Semler, supra at *3.

In his State Court action, the Plaintiff claimed that the Defendants were liable for distributing false information, because the Notifications of Release disclosed conduct for which he had not been convicted.  See, <u>State Court Complaint</u>, supra.

However, on May 11, 2006, the State Court dismissed the Plaintiff's claims against Klang, arising out of the 2002 Notification of Release, as time-barred.  See, <u>Affidavit of James R. Andreen ("Andreen Aff.")</u>, <u>Docket No. 24</u>, Exhibit A ("First State Court Order").  Subsequently, on August 15, 2006, the State Court concluded that the City Defendants were not entitled to statutory immunity, pursuant to Section 244.052, Subdivision 7(c), because they had disclosed information relating to offenses for which the Plaintiff had not been convicted.  See, <u>Hiveley Aff.</u>, supra, Exhibit B ("Second State Court Order") at p. 4.  Nonetheless, the Court dismissed the Plaintiff's claims against the City Defendants, based upon the doctrine of official immunity, because the City Defendants' conduct was neither willful nor malicious.[5]  <u>Id.</u> at pp.

---

[5]"As distinguished from the 'qualified immunity' afforded peace officers when addressing 42 U.S.C. §1983 claims, under Minnesota law a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion."  <u>Johnson v. Morris</u>, 453 N.W.2d 31, 41 (Minn. 1990); <u>Cross v. Mokwa</u>, 547 F.3d 890, 893 (8th Cir. 2008) ("Qualified immunity protects government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"), quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 n. 30 (1982); <u>Hayek v. City of St. Paul</u>, 488 F.3d 1049, 1055-1056 (8th Cir. 2007).

5-9.  Thereafter, by Order dated September  22, 2006, the Court dismissed the Plaintiff's remaining claims against Klang, arising out of the 2003 Notification of Release, because the Plaintiff had yet to effect service of process upon Klang and, as a result, the statute of limitations had expired on his remaining claims.  See, <u>Andreen Aff.</u>, supra, Exhibit B ("Third State Court Order").[6]

---

[6]Notably, Minnesota Statutes Section 244.052 does not purport to **create** a cause of action for the wrongful disclosure of sex offender information.  Instead, the statute merely provides that law enforcement agencies and officials are immune from any civil claims based upon the distribution of sex offender information that is "consistent with the offender's conviction history," while withholding statutory immunity for claims based upon the disclosure of other information.  See, <u>Minnesota Statutes Section 244.052, Subdivision 7(c)</u>.  However, in order to sustain a claim based upon the distribution of a Notification of Release, a plaintiff would have to prove that the defendant committed some type of common law tort -- here, the Plaintiff alleged slander and defamation.  See, <u>State Court Complaint</u>, supra.

In order to sustain a claim for slander or defamation, the Plaintiff would be required to prove that the Notifications of Release contained information that was actually false.  See, <u>Krutchen v. Zayo Bandwidth Northeast, LLC</u>, --- F.Supp.2d ----, 2008 WL 5142375 at *12 (D. Minn., December 5, 2008)(Under Minnesota law, "[t]he elements of defamation are: (1) a false and defamatory statement about the plaintiff; (2) publication of that statement to a third party; and (3) harm to the plaintiff's reputation."), citing <u>Weinberger v. Maplewood Review</u>, 668 N.W.2d 667, 673 (Minn. 2003).  We express our doubt that the Plaintiff could sustain that burden, given the evidence which was presented at the Plaintiff's civil commitment Trial, and given the findings of the State Courts, that there was clear and convincing evidence to prove the Plaintiff's attack on a fourteen (14) year old female victim, as well as his forcible rape of a seventeen (17) year old female victim.  See, <u>In re Semler</u>, supra at *2.

- 10 -

On December 18, 2007, the Minnesota Court of Appeals affirmed the dismissal of the Plaintiff's State Court action.  See, <u>Semler v. Klang</u>, supra.  In its decision, the Minnesota Court of Appeals carefully reviewed Section 244.052, and concluded that "Huber, Koop, and Bolduc had disclosed information relating to conduct for which [the Plaintiff] was not convicted, and [therefore,] the statutory immunity provided by subdivision 7 is not available to [the City Defendants]."  <u>Id.</u> at 278.  Nonetheless, the Minnesota Court of Appeals concluded that the City Defendants were protected by official immunity, because their conduct had not been willful or malicious, and accordingly, it affirmed the dismissal of the Plaintiff's claims.  <u>Id.</u> at 278-79.

Moreover, the Minnesota Court of Appeals affirmed the dismissal of Klang, based upon ineffective service of process, <u>id.</u> at 280, and it further concluded that the Plaintiff's claims against all four (4) Defendants were time-barred, pursuant to Minnesota Statutes Section 541.07(1), which imposes a two (2) year statute of limitations period for slander and defamation.  <u>Id.</u> at 279-81.  Accordingly, the Court affirmed the dismissal of all of the Plaintiff's claims, with prejudice, <u>id.</u> at 281, and on February 19, 2008, the Minnesota Supreme Court denied the Plaintiff's petition for review.

Approximately six (6) weeks later, the Plaintiff filed his current Complaint with this Court. See, <u>Complaint</u>, supra. The facts and circumstances, which give rise to the Plaintiff's current claims, are identical to those in his prior State Court action, and as we have detailed, the Plaintiff has named the same four (4) Defendants in his current action. <u>Id.</u> at p. 10 ¶2 ("Plaintiff previously sought informal and formal relief from the proper [State] Courts regarding the acts alleged in this action," but "no relief was given, as the lower Courts ignored plaintiff's request as well as all the evidence he submitted * * * ."). However, in addition to his State law claims for slander and defamation, the Plaintiff now alleges that the Defendants violated his Federal constitutional rights by distributing the Notifications of Release, and by sharing information with the ECRC, and he seeks relief pursuant to Title 42 U.S.C. §1983. <u>Id.</u> at pp. 1, 4, 7-9.

The City Defendants, and Klang, now bring separate Motions to Dismiss the Plaintiff's claims, pursuant to the principles of <u>res judicata</u>, and the <u>Rooker-Feldman</u> doctrine. See, <u>Docket Nos. 14, 21</u>; see also, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983). In addition, Klang asserts an alternative basis for dismissal, based upon the Plaintiff's failure to effect service of process. See, <u>Docket No. 21</u>. The Plaintiff

opposes the Motions, and he has filed a Motion for Default Judgment against Klang.

See, <u>Docket No. 29</u>.  We address the parties' arguments in turn.

## III. <u>Discussion</u>

A.      <u>The Plaintiff's Motion for Default Judgment</u>.  The Plaintiff seeks the

entry of Default Judgment against Klang.  According to Rule 55(a), Federal Rules of

Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend as provided by these rules, and the fact

is made to appear by affidavit or otherwise, the clerk must enter the party's default."

A Judgment of default may, thereafter, be entered on application to the Court.  See,

<u>Rule 55(b), Federal Rules of Civil Procedure</u>; <u>Johnson v. Dayton Electric</u>

<u>Manufacturing Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998)("When a party 'has failed to

plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default

under Rule 55(a) must precede grant of a default judgment under Rule 55(b).");

<u>United States v. Woods</u>, 2004 WL 790332 at *3 (D. Minn., March 31, 2004)("Rule

55(b)(2) commits the entry of a default judgment to the discretion of the district

court."), citing <u>FTC v. Packers Brand Meats, Inc.</u>, 562 F.2d 9, 10 (8th Cir. 1977); see

also, <u>Harris v. St. Louis Police Dep't</u>, 164 F.3d 1085, 1086 (8th Cir. 1998).[7]

---

[7]Here, as a threshold matter, the Plaintiff has failed to secure the entry of default
against Klang from the Clerk of Court, pursuant to Rule 55(a), Federal Rules of Civil

When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer, or other pleading, prior to an entry of Default Judgment.   See, <u>Johnson v. Allied Interstate Inc.,</u> 2002 WL 1906024 at *2 (D. Minn., August 19, 2002)("Although the entry of a default against Allied would have been warranted as of the date Johnson brought her motion for default judgment, no default was entered on the docket pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and Allied is prepared to defend the lawsuit on the merits.").

Here, the Plaintiff contends that Klang failed to file an Answer, or otherwise respond to his Complaint, within twenty (20) days of service, as required by Rule 12(a)(1)(A), Federal Rules of Civil Procedure ("[A] defendant shall serve an answer * * * within 20 days after being served with the summons and complaint.").   On August 1, 2008, the Plaintiff filed an executed Summons with the Clerk of Court, which disclosed that a copy of the Summons and Complaint were purportedly served upon "Rhonda Hattestad[,] secretary to James Andreen [of] Erstad & Riemer."  See, <u>Docket No. 19</u>.   Thereafter, by Order dated September 2, 2008, we directed the Plaintiff to notify Klang that he was required to serve an Answer, or some other

---

Procedure.

- 14 -

responsive pleading, or to move for an extension of time to do so.  See, <u>Docket No. 20</u>.  We further directed the Plaintiff to file a Motion for Entry of Default within ten (10) days of such notification, unless Klang filed a responsive pleading.  <u>Id.</u>

Two (2) days later, on September 5, 2008, in lieu of an Answer, and as permitted by Rule 12(b), Federal Rules of Civil Procedure, Klang filed a Motion to Dismiss, or for Summary Judgment, in which he asserted several affirmative defenses to the Plaintiff's claims.  See, <u>Docket No. 21</u>.  Since Klang filed a responsive pleading within the time allowed by our Order, and because Klang has demonstrated his intention to defend against the Plaintiff's claims, we recommend that the Plaintiff's Motion for Entry of Default Judgment be denied as without merit.

B.   <u>The Defendants' Motions to Dismiss</u>.  All four (4) Defendants contend that we lack subject matter jurisdiction over the Plaintiff's claims, based upon the <u>Rooker-Feldman</u> doctrine, and the principles of <u>res</u> <u>judicata</u>.  See, <u>City Defendants' Memorandum in Support</u>, <u>Docket No. 15</u>; <u>Klang's Memorandum in Support</u>, <u>Docket No. 23</u>.  We address those arguments in turn.

1.   <u>Standard of Review</u>.  A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived.  See, <u>Moubry v. Independent School District</u>

No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993) ("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 882, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,' "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

In turn, "[w]hen reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. See, Maki v. Allete, Inc., supra at 742. "A complaint shall not be dismissed for

its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[8]   Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."   Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

---

[8]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007)(the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1960. Here, we apply the Supreme Court's "accepted pleading standard."

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Here, because our decision rests entirely upon the pleadings, and upon the State Court decisions which are necessarily embraced by the Plaintiff's Complaint, we analyze the Defendants' Motions under the framework of Rule 12(b), rather than under the regimen of Rule 56.

2.   The Rooker-Feldman Doctrine. As noted, the Defendants argue that the Plaintiff's claims against them are barred by the Rooker-Feldman doctrine, because the Plaintiff effectively seeks a reversal of the State Courts' decisions, through his current Complaint. See, Rooker v. Fidelity Trust Co., supra at 416; District of Columbia Court of Appeals v. Feldman, supra at 476.

- 19 -

The <u>Rooker-Feldman</u> doctrine holds that Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings. See, <u>Rooker v. Fidelity Trust Co.</u>, supra at 416; <u>District of Columbia Court of Appeals v. Feldman</u>, supra at 476; <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 283 (2005); see also, <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001); <u>Bechtold v. City of Rosemount</u>, 104 F.3d 1062, 1065 (8th Cir. 1997). With minor exceptions, which do not apply here, Federal review of a State Court determination may only be obtained in the United States Supreme Court. See, <u>District of Columbia Court of Appeals v. Feldman</u>, supra at 476, citing <u>Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 296 (1970); <u>Charchenko v. City of Stillwater</u>, 47 F.3d 981, 983 (8th Cir. 1995); see also, <u>Title 28 U.S.C. §1257</u>.

The Supreme Court, in <u>Feldman</u>, formulated a general rule, which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction. As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial

proceedings," they fall outside of the Federal Court's jurisdiction.   District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Recognizing that lower Courts have construed the Rooker-Feldman doctrine "to extend far beyond the contours of the Rooker and Feldman cases," the Supreme Court recently clarified that the Rooker-Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name:   cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   Exxon Mobil Corp. v. Saudi Basic Industries Corp., supra at 284.   As our Court of Appeals has aptly explained:

> The basis for the Rooker-Feldman doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. §1257.

Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, 547 U.S. 1135 (2006).

In reaching its holding in Exxon-Mobil, the Supreme Court observed that the "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that "[p]reclusion, of course, is not a jurisdictional matter."   Id. at 293.

- 21 -

Accordingly, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id., quoting, GASH Associates v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993); accord Noel v. Hall, 341 F.3d 1148, 1163-64 (9th Cir. 2003). Since deciding Exxon-Mobil, the Supreme Court has reiterated that "Rooker-Feldman is not simply preclusion by another name," and "[i]ncorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a uniform **federal** rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." Lance v. Dennis, 546 U.S. 459, 466 (2006) [emphasis in original].

In the wake of the Supreme Court's decisions in Exxon-Mobil and Lance, several Circuit Courts of Appeals have re-examined their Rooker-Feldman jurisprudence. Those Courts have invariably determined that the doctrine is limited to situations where the plaintiff seeks redress for injuries that were caused by a State Court Judgment. See, McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006), cert. denied, --- U.S. ---, 128 S.Ct. 41 (2007); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3rd Cir. 2006); Bolden v. City of Topeka, 441 F.3d 1129,

1145 (10th Cir. 2006); Davani v. Virginia Department of Transportation, 434 F.3d 712, 718 (4th Cir. 2006); Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2nd Cir. 2005); Galibois v. Fisher, 174 Fed.Appx. 579, 579-81 (1st Cir. 2006); see also, Noel v. Hall, supra at 1163; Jensen v. Foley, 295 F.3d 745, 747-48 (7th Cir. 2002). Indeed, the Court of Appeals for the Second Circuit has determined that the requirement set forth in Exxon-Mobil, that "federal plaintiffs are not subject to the Rooker-Feldman bar unless they **complain of an injury** caused by a state judgment [,] * * * is the core requirement from which others derive." Hoblock v. Albany County Board of Elections, supra at 87 [emphasis in original].

In light of these recent developments in the law, it is now evident that the "inextricably intertwined" language set forth in Feldman "does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state court loser seeks redress in the federal district court for the injury caused by the state court decision, his federal claim is, by definition, 'inextricably intertwined' with the state court decision, and is therefore outside of the jurisdiction of the federal district court." Davani v. Virginia Department of Transportation, supra at 719. As recently explained by our Court of Appeals:

>A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court * * * . Rather, <u>Rooker-Feldman</u> is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

<u>Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.</u>, 487 F.3d 1154, 1157 (8th Cir. 2007)[internal citation omitted], cert. denied, --- U.S. ---, 128 S.Ct. 495 (2007).[9]

Based on the overwhelming weight of authorities we have referenced, we find that, under <u>Exxon-Mobil</u>, the <u>Rooker-Feldman</u> doctrine only applies in those instances where the plaintiff seeks redress for an injury caused by the State Court decision itself. Stated differently, when a losing party in a State Court action asks a Federal District Court to review and reverse a Judgment entered against him in the State Court, the <u>Rooker-Feldman</u> doctrine does apply, and the Federal Court is barred from entertaining the losing party's claim on the merits.

---

[9]In <u>MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.</u>, 546 F.3d 533, 539 (8th Cir. 2008), quoting <u>Riehm v. Engelking</u>, 538 F.3d 952, 965 (8th Cir. 2008), the Court reiterated as follows:

>If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

- 24 -

Here, the Plaintiff plainly seeks a review and reversal of the State Court Judgment.  Indeed, in his memorandum, the Plaintiff explicitly states that he filed his current action "for review of the state court decisions[,] stating he has suffered injury due to the dismissal of his claims, [and] also claiming Defendants have defamed him in violation of Minnesota Statute §244.052, subd. 7(c) (2005)."  Plaintiff's First Memorandum in Opposition, Docket No. 18, at p. 5.  In addition, the Plaintiff asserts that "there is no question that plaintiff has filed this suit in Federal Court to seek redress for injuries he believes weer [sic] caused by the State Court decisions," and to seek "redress in the Federal Court for injury caused by above-named defendants, and by the state court decision."  Id. at pp. 2, 12.  In fact, he argues that, "in order for the Federal Court to hear State claims as well as Federal claims that are in a suit, a plaintiff, [sic] must go through and exhaust his state remedies through all state court proceedings."  Id. at p. 13.

As a consequence, we are compelled to conclude that the Rooker-Feldman doctrine bars the Plaintiff's current claims, insofar as he seeks a review and reversal of the State Court Judgment, because the only Federal Court that could properly review the State Courts' rulings is the United States Supreme Court.  Accordingly, to the extent that the Plaintiff now seeks an appellate-style review of the claims that were

raised and dismissed in his previous State Court action, we recommend that the Defendants' Motions to Dismiss be granted, pursuant to the <u>Rooker-Feldman</u> doctrine.

   3. <u>Res Judicata</u>.  As we have noted, the Plaintiff's current Complaint includes some "new" Federal constitutional claims, as well as a State constitutional claim, which he did not assert in his previous State Court action.  See, <u>Complaint</u>, supra; cf. <u>State Court Complaint</u>, supra.  Since the State Courts did not specifically adjudicate any Federal claims, those claims are not subject to dismissal under <u>Rooker-Feldman</u>.  See, <u>Merkl v. Pendleton</u>, 2008 WL 4821640 at *1 (8th Cir., November 7, 2008)(concluding that the plaintiff's Section 1983 claims were not barred by <u>Rooker-Feldman</u>, because he "presented federal claims independent from those that he had previously presented in state court, and he was not merely seeking review and rejection of the state court judgments"); <u>Riehm v. Engelking</u>, 538 F.3d 952, 965 (8th Cir. 2008)(same).  However, the Defendants contend that all of the Plaintiff's claims, whether based upon State or Federal law, are barred by <u>res judicata</u>, because they could have been asserted in the prior State Court action.  We agree.

  "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  <u>Migra v. Warren City School Dist. Board of</u>

- 26 -

Education, 465 U.S. 75, 81 (1984), citing Allen v. McCurry, 449 U.S. 90, 96 (1980).

"Prior state court adjudications are given preclusive effect even in later federal §1983

actions." Simmons v. O'Brien, 77 F.3d 1093, 1096 (8ᵗʰ Cir. 1996); see also, Migra v.

Warren City School Dist. Board of Education, supra at 83 ("Allen [v. McCurry, supra]

* * * made clear that issues actually litigated in a state-court proceeding are entitled

to the same preclusive effect in a subsequent federal §1983 suit as they enjoy in the

courts of the State where the judgment was rendered.").   Accordingly, we apply

Minnesota principles of res judicata to determine the preclusive effect of the State

Court rulings on the Plaintiff's claims against the City Defendants.

Under Minnesota law, "[r]es judicata precludes parties from raising subsequent

claims in a second action when:  '(1) the earlier claim involved the same set of factual

circumstances; (2) the earlier claim involved the same parties or their privities; (3)

there was a final judgment on the merits; (4) the estopped party had a full and fair

opportunity to litigate the matter.'"  Brown-Wilbert, Inc. v. Copeland Buhl & Co.,

P.L.L.P., 732 N.W.2d 209, 220 (Minn. 2007), quoting Hauschildt v. Beckingham, 686

N.W.2d 829, 840 (Minn. 2004).  "Res judicata prohibits parties from raising a claim

in a second suit that was, or 'could have been,' litigated in the earlier action." Drewitz

v. Motorwerks, Inc., 728 N.W.2d 231, 239 (Minn. 2007), citing Hauschildt v.

Beckingham, supra at 840; see also, Brown-Wilbert, Inc. v. Copeland Buhl & Co.,

P.L.L.P., supra at 220 ("Res judicata applies equally to claims actually litigated and

to claims that could have been litigated in the earlier action."), citing State v. Joseph,

636 N.W.2d 322, 327 (Minn. 2001).

Here, plainly the earlier action, in the Minnesota Courts, involved the same

factual circumstances as the Plaintiff now raises in Federal Court. The pertinent

parties, in both the State Court actions, and this Federal case, are identical, and the

State Court action resulted in a final Judgment, which was affirmed by the Minnesota

Court of Appeals, followed by the Minnesota Supreme Court's denial of the Plaintiff's

subsequent petition for review. Even though the Plaintiff's State Court action never

moved past the pleadings stage, "it is well-established that a Rule 12(b)(6) dismissal

is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted

leave to amend or the dismissal is reversed on appeal." United States v. Maull, 855

F.2d 514, 516 n. 3 (8th Cir. 1988), citing, as examples, Federated Dep't Stores v.

Moitie, 452 U.S. 394, 399 n. 3 (1981), Carter v. Money Tree Co., 532 F.2d 113, 115

(8th Cir. 1976), cert. denied, 426 U.S. 925 (1976), and Glick v. Ballentine Produce,

397 F.2d 590, 593 (8th Cir. 1968); see also, Lommen v. City of East Grand Forks, 97

F.3d 272, 275 (8th Cir. 1996)(where Minnesota State Court action was dismissed,

based upon the defendant police officer's official immunity, a subsequent Federal Court lawsuit against the same defendant was barred by res judicata); State v. Joseph, supra at 328 (dismissal based upon statute of limitations is a final judgment, for purposes of res judicata); Hanson v. Gilliland, 2008 WL 2168536 at *3 (Minn.App., 2008)(same); Nitz v. Nitz, 456 N.W.2d 450, 452 (Minn.App. 1990)(same).[10] Nor can it be said that the Plaintiff did not have a full and fair opportunity to litigate the State Court action, and he has not shown any objectively legitimate basis on which to make any such claim.

Of course, we are mindful that, in the earlier State Court action, the Plaintiff did not expressly include claims under Section 1983, and the Minnesota Constitution. Such a difference in the legal theories of recovery, however, does not vitiate the

---

[10]In the underlying State Court action, the Plaintiff's claims against Klang, relating to the 2002 Notification of Release, were dismissed with prejudice, pursuant to the statute of limitations, while his claims relating to the 2003 Notification of Release were initially dismissed without prejudice, based upon his failure to effect service of process upon Klang.  See, First State Court Order, supra at pp. 2-3. However, after the Plaintiff made another unsuccessful attempt to serve Klang, the Crow Wing County District Court concluded that **all** of the Plaintiff's claims against Klang were time-barred, and it dismissed the Plaintiff's claims **with prejudice**.  See, Third State Court Order, supra at p. 2; Semler v. Klang, supra at 280-281 ("[T]he district court did not err in dismissing with prejudice the claims against Klang on the ground that the statute of limitations had run.").

preclusive effect of the prior State Court Judgment.   As the Court explained, in

Hauschildt v. Beckingham, supra at 840-41:

> Therefore, the focus of res judicata is whether the second claim "arise[s] out of the same set of **factual circumstances**."  Hauser [v. Mealey, 263 N.W.2d 803,] 807 [(Minn. 1978)]; see also Meagher ex rel. Pension Plan v. Bd. of Trustees of Pension Plan, 921 F.Supp. 161, 167 (S.D.N.Y.1995)(stating "the **facts** surrounding the occurrence which constitutes the cause of action -- not the legal theory upon which [plaintiff] chose to frame his complaint -- must be identical in both actions to trigger res judicata."), aff'd, 79 F.3d 256 (2nd Cir. 1996)).
>
> The "common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions." McMenomy v. Ryden, 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967).  In addition, claims cannot be considered the same cause of action if "the right to assert the second claim did not arise at the same time as the right to assert the first claim."  [Care Inst., Inc.-Roseville v. County of Ramsey, 612 N.W.2d 443,] 447 [(Minn. 2000)].

[Emphasis in original].

As we have detailed, the factual circumstances of both the State Court action, and the

Plaintiff's current claims against the Defendants, are identical.  There is no reason

why the Plaintiff could not have raised any constitutional issues, which he might now

seek to assert here, in those State Court proceedings.  Accordingly, to the extent that

the Plaintiff's claims are not barred by the Rooker-Feldman doctrine, we conclude,

nonetheless, that the Plaintiff's claims are barred by <u>res judicata</u>, and we recommend that the Defendants' Motions to Dismiss, under Rule 12(b)(6), be granted.

     C.   <u>Klang's Motion to Dismiss</u>.  Lastly, we address Klang's alternative argument, that the Plaintiff's claims against him must be dismissed, based upon ineffective service of process.  See, <u>Klang's Memorandum in Support</u>, supra at p. 4; <u>Rule 12(b)(5), Federal Rules of Civil Procedure</u>.

Proper service of process is necessary because, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant." <u>Printed Media Services, Inc. v. Solna Web, Inc.</u>, 11 F.3d 838, 843 (8th Cir. 1993), citing <u>Dodco, Inc. v. American Bonding Co.</u>, 7 F.3d 1387, 1388 (8th Cir. 1993); see, <u>Murphy Bros., Inc. v. Michetti Pipe Stringing</u>, 526 U.S. 344, 350 (1999); <u>Sieg v. Karnes</u>, 693 F.2d 803, 807 (8th Cir. 1982); <u>Personalized Brokerage Services, LLC v. Lucius</u>, 2006 WL 2975308 at *1 (D. Minn., October 16, 2006).

Service of process can be effected, under the Federal Rules, by "delivering a copy of [the Summons and the Complaint] to an agent authorized by appointment or by law to receive service of process." <u>Rule 4(e)</u>, <u>Federal Rules of Civil Procedure</u>. However, "[a]n attorney will not be deemed an appointee for service of a lawsuit on behalf of [his] client simply by virtue of [his] role as an attorney." <u>Thelen v. City of Elba</u>, 2009 WL 212940 at *4 (D. Minn., January 28, 2009), citing <u>Indus. Indem. Co.</u>

v. Harms, 28 F.3d 761, 762 (8th Cir. 1994), Santos v. State Farm Fire and Cas. Co., 902 F.2d 1092, 1094 (2nd Cir. 1990), and 4A Wright & Miller Federal Practice and Procedure: Civil 3d §1097 ("Thus * * * even the defendant's attorney probably will not be deemed an agent appointed to receive process absent a factual basis for believing that an appointment of that type has taken place.").

Here, Klang is represented by James R. Andreen, Esq. ("Andreen"), of Erstad & Riemer, PA. In support of his Motion, Klang has submitted an Affidavit from Michelle Hendricks ("Hendricks"), who is the receptionist at Erstad & Riemer, PA, and who attests that, on July 30, 2008, "a person set papers down on my desk that purported to be a Summons and Complaint [for this action]," but the person "did not provide these papers to anyone else to my knowledge." Affidavit of Michelle Hendricks ("Hendricks Aff."), Docket No. 25, at ¶2. In addition, Andreen has submitted an Affidavit, in which he attests that he has "never been authorized, nor held [himself] out as authorized, to accept service * * * on behalf of Erick Klang." Affidavit of James R. Andreen ("Andreen Aff."), Docket No. 24, at ¶1. Andreen further attests that the staff at Erstad & Riemer, PA, has never stated that they "would accept service of process on behalf of Erick Klang[.]" Id.

"[A]lthough authority to accept process need not be explicit, it must either be express or implied from the type of relationship that has been established between the

defendant and the alleged agent."   <u>4A Wright & Miller Federal Practice and Procedure: Civil 3d §1097</u>; see also, <u>Thelen v. City of Elba</u>, supra at \*4 (citing same). In <u>Thelen</u>, the Court found that an attorney had implied his authorization to accept service of process, by sending a letter to the plaintiffs, in which he "told the [plaintiffs] in no uncertain terms that he received a copy of the Complaint, that he represented the non-Mehrkens Defendants, and that the [plaintiffs] should not contact those Defendants 'either by letter or in person.'"   <u>Thelen v. City of Elba</u>, supra at \*5. Here, by contrast, we find no basis to conclude that Andreen, or any other person at his law firm, was impliedly authorized to accept service of process on behalf of Klang, beyond the Plaintiff's conclusory assertion that Andreen is an authorized agent for service.  See, <u>Plaintiff's Second Memorandum in Opposition</u>, <u>Docket No. 30</u>, at p. 5. In addition, Andreen specifically attests that he is not authorized to accept service of process on behalf of Klang.  As a result, we conclude that the Plaintiff has failed to effect service of process on Klang, in a manner recognized by the Federal Rules.

Although we acknowledge that, as a <u>pro se</u> litigant, the Plaintiff is entitled to certain leniencies in the prosecution of his case, we cannot ignore the requirement that the Plaintiff effect proper service of process on the Defendants.  See, <u>Hinz v. Washington Mutual Home Loans</u>, 2004 WL 729239 at \*2 (D. Minn., April 2, 2004).

In <u>Hinz</u>, the Court addressed a <u>pro se</u> litigant's failure to serve process in accordance with the Federal Rules, observing as follows:

> The Court recognizes that the [plaintiffs] are proceeding <u>pro se</u> in this matter, and may therefore not fully appreciate the procedural requirements of bringing a lawsuit in federal court. However, the Court is obligated to uphold the rights and protections afforded Defendants when those Defendants are brought before this Court.

Accordingly, the Plaintiff's status as a <u>pro se</u> litigant, along with his good faith attempts to comply with the Rules, do not excuse him from adhering to the procedural requirements for service of process.

Nor may we overlook any deficiencies in his service of process, simply because Klang had actual notice of the lawsuit. Notably, under both State, and Federal law, "actual notice" does not discharge the Plaintiff of his duty to effectuate proper service. See, <u>Sieg v. Karnes</u>, supra at 807 (finding that Federal Court lacked personal jurisdiction over improperly served defendant despite actual notice); <u>Willis v. Tarasen</u>, 2005 WL 1705839 at * 2 (D. Minn., July 11, 2005)(same); <u>Turek v. ASP of Moorhead, Inc.</u>, 618 N.W.2d 609, 612 (Minn.App. 2000), rev. denied (Minn., January 26, 2001); <u>Coons v. St. Paul Cos.</u>, 486 N.W.2d 771, 775 (Minn. App. 1992).

Lastly, while an objection to service of process may be waived, if not raised at the first available opportunity, see, <u>Rule 12(h), Federal Rules of Civil Procedure</u>,

Klang has challenged the effectiveness of Plaintiff's service of process, in his Motion to Dismiss, as subsequently documented in his Memorandum in Support of that Motion.   See, <u>Docket Nos. 21, 23</u>.   Having found that the Plaintiff has failed to effectuate service of process, under the applicable Federal Rules of Civil Procedure, we find that we are without personal jurisdiction over Klang.   Accordingly, in the event that we have subject matter jurisdiction over the Plaintiff's claims against Klang, we recommend, in the alternative, that the Plaintiff's claims against Klang be dismissed, without prejudice, for failure to effect service of process.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the City Defendants' Motion to Dismiss [Docket No. 14] be granted, based upon the <u>Rooker-Feldman</u> doctrine, and principles of <u>res judicata</u>.

2.     That Klang's Motion to Dismiss [Docket No. 21] be granted, based upon the <u>Rooker-Feldman</u> doctrine, and principles of <u>res judicata</u>, or alternatively, based upon ineffective service of process.

3.     That the Plaintiff's Motion for Default Judgment [Docket No. 29] be denied.

Dated:  February 9, 2009                    *s/Raymond L. Erickson*
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 27, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 27, 2009**, unless all interested

- 36 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.